UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


WILLIS INSURANCE SERVICES
OF GEORGIA, INC.,

    Plaintiff,

v.                                CASE NO. 8:18-cv-1826-T-23AAS

ALLIANT INSURANCE SERVICES,
INC., and BRENT HARTMAN,

    Defendants.
_____/


**ORDER**

A provider of insurance, reinsurance, and other risk-spreading mechanisms

for the construction industry, Alliant Insurance Services allegedly poached several

employees, including Brent Hartman, from Willis Insurance Services of Georgia,

which competes against Alliant.  Willis sues (Doc. 1) Hartman, a broker who

resigned from Willis on July 17, 2018, and alleges that Hartman failed to provide

fifteen days written' notice of the resignation in accord with a 2004 agreement

between Willis and Hartman.  Also, Willis sues Hartman for breaching the

agreement's prohibitions on soliciting Willis's clients and employees.  Finally, Willis

sues Alliant for tortious interference with a business relation and claims that Alliant

intentionally induced Hartman to breach the purported fifteen-day-notice provision.

Willis moves (Doc. 2) for a temporary restraining order against Hartman's working for Alliant for at least fifteen days and against Hartman's resigning without fifteen days' written notice. According to Willis, the fifteen-day period permits an "orderly transition" of responsibility from Hartman to Hartman's successor and affords Willis an opportunity to "help preserve client relationships." (Doc. 2 at 18) Also, Willis moves for a temporary restraining order based on several non-solicitation provisions in the 2004 agreement. Willis contends that a temporary restraining order is necessary to protect against Willis's loss of clients, employees, and "referrals from existing clients." (Doc. 2 at 4)

## DISCUSSION

### 1. The "notice" provision

First, Willis assumes (with little discussion) that the 2004 agreement requires Hartman to provide written notice to Willis at least fifteen days before resigning. But the provision cited by Willis mentions nothing about providing written notice before a resignation. Rather, the provision states:

> This Agreement shall . . . continue until terminated (i) by either party, with or without cause, upon fifteen calendar days prior written notice, [or] (ii) immediately by Employer upon any willful misconduct or material breach by [Hartman] of this Agreement.

(Doc. 1-2 at 3) If the parties intended to require fifteen days' written notice before a resignation, the parties might have agreed, for example, that "Hartman must notify Willis in writing at least fifteen days before resigning." Willis equates termination and resignation, which is an equivalency that is far from certain (for example, if on

- 2 -

June 1 a person submits a resignation "effective December 31," on which day has

the person "resigned" or, if it all, "terminated" the relation?). Ambiguity about the

meaning of this "termination" provision gravitates against finding a likelihood of

success on the merits.[1]

## 2. The non-solicitation provisions

Similarly, uncertainty about the non-solicitation provisions gravitates against

finding a likelihood of success. In paragraph three of the 2004 agreement, the parties

agreed that Hartman will not, for two years after his employment with Willis,

"directly or indirectly solicit, accept, or perform" an insurance or risk-management

service for a client with whom Hartman worked while at Willis (if Willis provided

service to the client within a year of Hartman's departure) or for a prospective client

with whom Hartman "had business contacts" (if Hartman spoke to the prospective

client within six months of Hartman's departure). (Doc. 1-2 at 3) Finally, a

provision prohibits Hartman's "directly or indirectly" soliciting a Willis employee to

work for a Hartman or a third party. (Doc. 1-2 at 3)

Under the agreement, the non-solicitation provisions apply only within

"the Territories below." Elsewhere in the agreement, a provision states, "Territories

shall refer to those counties where the [r]estricted clients, [r]estricted prospects, or

[p]rotected [e]mployees are present and available for solicitation." (Doc. 1-2 at 3)

---

[1] Ambiguity about whether the 2004 agreement in fact requires Hartman to notify Willis fifteen days before resigning similarly precludes finding at this moment that Willis likely will succeed on the tortious-interference claim against Alliant.

In most states, a non-solicitation provision warrants enforcement only if reasonable in time, geography, and scope. *Restatement of Employment Law*, § 8.06. But different states reach different conclusions about reasonableness. Under the law of at least several states, the enforceability of several provisions in the agreement appears dubious. For example, rather than prohibiting only Hartman's soliciting a prospective or current Willis customer, the agreement prohibits Hartman's accepting business from a prospective or current Willis customer — even if Hartman never attempted to persuade the customer to switch to Alliant. Also, rather than identify by name the counties (or even the states) in which Hartman cannot solicit Willis's business, the agreement defines the geographic scope of the non-solicitation provision to co-extend with Willis's business. As Willis's business expands into new states, the geographic limitation expands.

These provisions might prove reasonable, but this order cannot determine confidently whether Willis shows a likelihood of success on the merits for at least one critical reason: Willis fails to identify persuasively the governing law. Although Willis claims that a choice-of-law provision selects Florida law to govern the agreement, the provision appears to admit at least two possibilities. Unlike the typical choice-of-law provision that names the state whose law governs, Willis and Hartman agreed that "[t]his Agreement shall be governed by the law of the state in which Employee is assigned a regular office location by Employer, without giving effect to that state's conflicts of law principles." (Doc. 1-2 at 5)

If Hartman remained in one office throughout his employment at Willis, the application of the clause might create no difficulty. But Hartman, who signed the 2004 agreement while assigned to a Georgia office, received a transfer to a Florida office in 2017. (Doc. 1 at ¶ 30) And on the day of the complaint, Hartman was not assigned to a Willis office (because Hartman resigned before this action).

Willis claims that Florida law applies because Hartman was assigned most recently to a Florida office. (Doc. 2 at 12) In contrast, Hartman sued in a Georgia state court two weeks ago and requested a declaratory judgment that Georgia law governs because Hartman was assigned to a Georgia office at the time of the agreement. (Doc. 1-3, the complaint in the Georgia action) Also in that action, Hartman requested a declaratory judgment that the non-solicitation provisions violate Georgia law, and the Georgia judge scheduled an emergency hearing for August 2, 2018. Because the applicability of Florida law appears uncertain and because Willis offers no argument about the enforceability of the provisions under Georgia law, Willis fails to show a demonstrable likelihood of success on the merits.[2]

### 3. The violation of Rule 65(b)(1)(B)

In addition to failing to show a likelihood of success on the merits, the motion for a temporary restraining order warrants denial for violating Rule 65(b)(1)(B), Federal Rules of Civil Procedure, which requires the movant's attorney to "certif[y]

---

[2] Also, although Willis cites (Doc. 2 at 17) Florida decisions about the enforceability of a covenant against "directly soliciting" the former employer's clientele, Wills conspicuously fails to cite any Florida decisions about the enforceability of a provision that prohibits a former employee's accepting an engagement from a client not solicited by the employee.

in writing any efforts made to give notice" to the adverse party and to explain why notice "should not be required." Willis's lawyers fail to certify in writing that counsel attempted to notify Hartman and Alliant about the motion and fail to explain the necessity for an injunction issued without notice to Hartman and Alliant. In any event, the impending August 2 hearing on Hartman and Alliant's motion for a temporary restraining order in the Georgia action militates mightily against issuing a temporary restraining order in this action.

## CONCLUSION

The motion (Doc. 2) for a temporary restraining order and preliminary injunction is **DENIED**.

ORDERED in Tampa, Florida, on July 26, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE